1  Paul A. Beck (SBN 79760)
   Law Offices of Paul A. Beck
2  A Professional Corporation
   13701 Riverside Drive, Suite 701
3  Sherman Oaks, California 91423
   Tel: (818) 501-1141; Fax: (818) 501-1241
4  Email: pab@pablaw.org

5  Attorneys for Debtor and
   Proposed Attorneys for Debtor-in-Possession,
6  Net Data Centers, Inc.

7

8              UNITED STATES BANKRUPTCY COURT

9              CENTRAL DISTRICT OF CALIFORNIA

10             LOS ANGELES DIVISION

11

12  In re:                              Case No. 2:15-bk-12690-BB

13                                      Chapter 11

14  NET DATA CENTERS, INC.              **APPLICATION OF DEBTOR AND**
                                        **DEBTOR-IN-POSSESSION FOR**
15                                      **ORDER AUTHORIZING**
                                        **EMPLOYMENT OF 321 CAPITAL**
16                      Debtor.         **PARTNERS, LLC, AS INVESTMENT**
                                        **BANKING CONSULTANTS;**
17                                      **DECLARATION OF ERVIN M.**
                                        **TERWILLIGER IN SUPPORT**
18                                      **THEREOF**

19                                      [No Hearing Required –
                                        Local Bankruptcy Rule 2014-1]
20

21

22

23          Net Data Centers, Inc., the Debtor and Debtor-in-Possession herein (the "Debtor"),

24  respectfully seeks the issuance and entry of an order authorizing and approving the appointment of

25  321 Capital Partners, LLC ("321 Capital"), as its investment banking consultants in this case (the

26  "321 Application"). In support of the 321 Application, the Debtor respectfully represents as

27  follows:

28

1.    This Court has jurisdiction over this application pursuant to Title 28 U.S.C. §§ 157 (b) (2) and 1334. The venue of the bankruptcy case and this application is proper in this district pursuant to Title 28 U.S.C. §§ 1408 and 1409. The statutory predicate for the relief sought herein is Sections 327 (a) and 328 (a) of Title 11 of the United States Code (the "Bankruptcy Code"), Rules 2014 (a) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and Local Bankruptcy Rule 2014-1 of the Local Rules for the Central District of California (the "Local Bankruptcy Rules").

2.    The Debtor filed its petition for relief under Chapter 11 of the Bankruptcy Code on February 23, 2015 (the "Petition Date"). Since the Petition Date, the Debtor has remained in possession of its assets as a debtor-in-possession, pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code. An Official Committee of Creditors Holding Unsecured Claims (the "Creditors Committee") was appointed by the Office of the United States Trustee ("OUST") on April 24, 2015 (Docket No. 79), and the Application of Buchalter Nemer, PC for an order authorizing its employment as counsel to the Creditors' Committee was filed on May 13, 2015 (Docket No. 103) and is pending. No trustee or examiner has been appointed in the Debtor's Chapter 11 case.

3.    In support of this Application, the Debtor submits the attached Declaration of Ervin M. Terwilliger, one of the principals of 321 Capital (the "Terwilliger Declaration"). In further support of this application, the Debtor respectfully represents as follows:

--        --        --

4.    This Application requests that this Court enter an order authorizing the Debtor to employ 321 Capital as the Debtor's investment banking consultants, effective as of May 11, 2015.

5.    Following the commencement of the Chapter 11 case, the Debtor determined that 321 Capital's knowledge and experience, as well as its compensation structure, were well-suited for its retention by the Debtor and, therefore, the Debtor decided to engage 321 Capital as its investment banking consultants, subject to the approval of the Court. 321 Capital specializes in strategic transactions, is a competent and experienced private investment banker with

1  substantial experience representing companies in Chapter 11 proceedings, and is well qualified

2  to consult with and assist the Debtor.

3        6. Other than an initial out-of-pocket expense outlay of $7,500, all of 321

4  Capital's compensation will be based upon the closing of a strategic transaction approved by the

5  Bankruptcy Court, as further described below.

6        7. 321 Capital does not represent any interest adverse to the Debtor-in-Possession

7  in the matters with respect to which it is to be engaged and is a disinterested party as that term is

8  defined in 11 U.S.C. §101(14).

9        8. The Debtor and 321 Capital are informed and believe that it would be in the

10  best interests of the Chapter 11 estate involved for 321 Capital to provide its services to the

11  Debtor-in-Possession for the benefit of the estate.

12        9. Pursuant to the terms of the retention agreement entered into by the Debtor and

13  321 Capital, which is expressly subject to Bankruptcy Court approval, 321 Capital will be

14  employed on a contingency basis, according to the following terms:

15        (a) Expenses. Out-of-pocket expenses are the responsibility of the Debtor,

16        subject to a maximum amount of Seven Thousand Five Hundred Dollars ($7,500). These

17        funds are strictly for marketing costs, such as printing, mailing, telephone and travel-

18        related expenses to meet with bankers, equity and debt sources, and investors, and to

19        provide due diligence materials to prospects. If these expenses exceed the

20        aforementioned amount, the excess will be the responsibility of 321 Capital;

21        (b) Gross Sales Proceeds. The term "Gross Sales Proceeds" as used in the

22        321 retention agreement includes the sum of:

23        (i) all cash payments;

24        (ii) any deferred payments, including leases, or financing

25        arrangements agreed to by the Debtor, and approved by the Bankruptcy Court;

26        and

27

28

1                      (iii) assumptions of any debt, including but not limited to leases of

2            real property, machinery and equipment, and/or vehicles; and

3                      (iv) the fees and expenses of 321, and all other closing costs and/or

4            adjustments, including adjustments and/or payments of any kind to lienholders,

5            secured parties, mortgages or otherwise, shall not be deducted when calculating

6            the Gross Sales Proceeds or the fee to be paid to 321 Capital;

7            (c) <u>Contingency Fee.</u>

8            321 Capital's contingency fee will be paid in cash at the settlement of any

9   refinancing and or sale of the Debtor's assets.  The fees for its services shall be as

10  follows:

11           Two percent (2%) of the filed and Court-approved "stalking horse bid"

12  with respect to Net Data Center's data centers in New Jersey and Virginia, or as

13  otherwise negotiated and agreed to by Net Data Centers and 321 Capital,

14                          plus

15           Ten percent (10%) of the difference between the filed and Court-approved

16  stalking horse bid and the final sale price with respect to Net Data Center's data centers

17  in New Jersey and Virginia, or as otherwise negotiated and agreed to by Net Data Centers

18  and 321 Capital.

19           321 Capital shall be entitled to its fee as defined above if a third party buyer

20  purchases the Net Data Center data center leases in New Jersey and Virginia, or if a third

21  party enters into another form of strategic transaction, including the direct acquisition of

22  debt from, or claims held or asserted by, a secured creditor against or with respect to

23  assets of Net Data Centers.

24           Furthermore, 321 Capital shall be entitled to receive its fee arising from any

25  purchase made or other strategic transaction entered into following approval of the

26  Bankruptcy Court (if Net Data Centers remains under the jurisdiction of the bankruptcy

27  court at the time of such strategic transaction) within 12 months from the date of its

28

1    engagement by a prospect contacted during the term of the engagement.  A prospect shall

2    be considered a qualified lead contacted by 321 Capital during the exclusive engagement

3    of 321 Capital.

4        10.  The Debtor submits that the foregoing compensation arrangements with 321

5    Capital are fair and equitable, and that it would be appropriate and in the best interests of the

6    Debtor-in-Possession and the Chapter 11 estate for the above-described contingency fee

7    arrangements and expense advance to be approved.

8        11.  Accordingly, subject to Bankruptcy Court approval of the terms and

9    conditions set forth in this Application, 321 Capital has agreed to act as investment banking

10    consultants to the Debtor as of May 11, 2015.  (See Declaration of Ervin M. Terwilliger filed

11    concurrently herewith.)

12        --        --        --

13        Pursuant to Local Bankruptcy Rule 2014-1(b)(3)(E), any response or opposition

14    to this Application and/or any request for a hearing thereon must be made in the form required

15    by Local Bankruptcy Rule 9013-1(f)(1) and must be filed with the Court and served upon Paul

16    A. Beck, Law Offices of Paul A. Beck, A Professional Corporation, 13701 Riverside Drive,

17    Suite 701, Sherman Oaks, California 91423-2499, and upon the Office of the United States

18    Trustee, no later than 14 days from the date of service of this Notice.

19        Pursuant to Local Bankruptcy Rule 9013-1(h), the failure to timely file and serve

20    an objection or request for hearing may be deemed by the Court to be consent to the relief

21    requested.

22        Any creditor or party in interest desiring a copy of the within Application should

23    contact proposed counsel for the Debtor-in-Possession as follows:

24        Paul A. Beck, Esq.

25        Law Offices of Paul A. Beck

26        A Professional Corporation

27        13701 Riverside Drive, Suite 510

28

1                        Sherman Oaks, California 91423

2                 Tel: (818) 501-1141; Fax: (818) 501-1241

3                     Email: pab@pablaw.org

4             For all of the foregoing reasons, the Debtor respectfully requests that 321

5 Capital's retention be approved and deemed effective as of May 11, 2015.

6             WHEREFORE, the Debtor respectfully requests that this Court issue its orders:

7                 (a)  Authorizing and approving the retention and employment of 321

8 Capital as investment banking consultants to the Debtor-in-Possession, effective as of May 11,

9 2015;

10                 (b)  Approving the arrangements for compensation and reimbursement of

11 321 Capital, as provided herein, to be paid at the expense of the estate in such amount(s) as the

12 Court may hereafter allow; and

13                 (c)  Granting such other and further relief as this Court deems just and

14 proper.

15

16 Dated: May 27, 2015             Respectfully submitted,

17                         Net Data Centers, Inc.

18

19                         By_____

20                            Pervez P. Delawalla

21                         Its President and Chief Executive Officer

22

23

24

25

26

27

28

### DECLARATION OF ERVIN M. TERWILLIGER

I, Ervin M. Terwilliger, declare as follows:

1. I am one of the principals and the Managing Partner of 321 Capital Partners, LLC ("321 Capital"), a national private investment banking and consulting firm located in Mariottsville, Maryland. I maintain an office at 2205 Warwick Way, Suite 310, Marriottsville, Maryland 21738.

2. Unless otherwise stated herein, I have personal and firsthand knowledge of all of the facts set forth below and, if called upon to testify as a witness, I could and would testify competently thereto under oath.

3. 321 Capital has been selected by the Debtor herein, Net Data Centers, Inc., to represent the Debtor as an investment banker and to assist the Debtor in marketing and generating a potential purchaser for the Debtor's east coast data center leases and/or a sale of certain of the Debtor's business units and related equipment and other assets, and to advise the Debtor with respect to potential "strategic transactions," including the direct acquisition of debt from, or claims held or asserted by, a secured creditor against or with respect to assets of Net Data Centers.

4. 321 Capital is a "disinterested person" in this case as that term is defined in 11 U.S.C. §101(14). It does not hold or represent any interest adverse to the estate. Furthermore, it has no prior connections with the Debtor, its creditors, or any other party in interest, with their respective attorneys and accountants, the United States Trustee or any person employed in the Office of the United States Trustee.

5. The Debtor and 321 Capital have agreed that 321 Capital shall be employed by the Debtor based upon the terms of the engagement agreement attached hereto as "Exhibit A" and incorporated therein and herein by this reference as though set forth in full.

6. My firm and I have significant experience marketing distressed businesses in the context of Chapter 11 bankruptcy reorganization cases and proceedings throughout the United States, and specifically with respect to data center businesses. Our firm resume, which outlines our

1    experience and qualifications, is attached as Exhibit "B" to this declaration and is incorporated

2    herein by reference as though set forth in full.

3            7. The firm's compensation arrangements as described in the Application set forth

4    above and in our engagement agreement are customary and well within the scope of compensation

5    for work of this nature.

6            8. Our firm has no prior connection with the Debtor, its creditors, equity security

7    holders or any other parties in interest herein, or with their respective attorneys or accountants, or

8    with the Office of the United States Trustee, except as disclosed herein.

9            9. 321 Capital agrees to accept the appointment as investment banking consultants

10    for the Debtor-in Possession under such terms as are authorized by the Bankruptcy Court, and we

11    agree to accept as compensation for our services such sums as may be authorized by this Court.

12            10. I understand that the provisions of 11 U.S.C. §§ 327, 330 and 331 require,

13    among other things, Bankruptcy Court approval of the Debtor's employment of my firm as its

14    investment banking consultants and of payment of our fees and reimbursement of costs and

15    expenses that my firm will receive from the Debtor's estate. My firm is not a creditor, an equity

16    security holder, or an insider of the Debtor.

17            11. To the best of my knowledge, neither my firm nor I hold or represent any

18    interest materially adverse to the interests of the estate or of any class of creditors or equity security

19    holders, by reason of any direct or indirect relationship to, connection with, or interest in the Debtor

20    or an investment banker for any security of the Debtor, or for any other reason.

21            12. In addition, to the best of the Debtor's knowledge, information and belief, and to

22    the best of my knowledge, neither my firm nor I hold or represent any interest materially adverse to

23    the Debtor or to the Debtor's estate, and my firm and I are "disinterested persons" as that term is

24    defined in §101(14) of the Bankruptcy Code. Moreover, to the best of my knowledge, neither my

25    firm nor I have any prior connection with the Debtor, with any creditors of the Debtor or their

26    estates, with any other party in interest in this case, or with its or their respective attorneys or

27

28

1    accountants, the Office of the United States Trustee, or with any person employed by the Office of

2    the United States Trustee.

3           13. Accordingly, 321 Capital is well qualified to represent the Debtor and Debtor-in-

4    Possession in this Chapter 11 case, and the proposed retention of 321 Capital as its investment

5    banking consultants, on the terms and conditions set forth herein, is necessary and in the best

6    interests of the Debtor and its Chapter 11 estate.

7           14. For all of the foregoing reasons, the Debtor has requested that my firm's

8    retention be approved as of May 11, 2015, and deemed effective as of that date.

9           15. A true and correct copy of the Notice of this Application, which was filed and

10   served in accordance with Local Bankruptcy Rule 2014-1(b)(2), is attached as Exhibit "C" hereto

11   and is incorporated herein by this reference.

12

13          I declare under penalty of perjury under the laws of the United States of America and

14   the State of California that the foregoing is true and correct, and that this declaration was executed

15   in Mariottsville, Maryland, on May 27, 2015.

16

17                               Ervin M. Terwilliger

18

19

20

21

22

23

24

25

26

27

28

3

# **EXHIBIT A**

# **EXHIBIT A**

## AGREEMENT BETWEEN NET DATA CENTERS, INC.
## AND THREE TWENTY-ONE CAPITAL PARTNERS, LLC

THIS AGREEMENT ("Agreement") is made and entered into this 11th day of May, 2015, by and between NET DATA CENTERS, INC. ("NDC"), and THREE TWENTY-ONE CAPITAL PARTNERS, LLC ("321") based on the following Recitals.

### RECITALS

WHEREAS, NDC seeks to formulate and confirm a Chapter 11 Plan of Reorganization ("Plan") which will enable it to emerge from its Chapter 11 bankruptcy case ("In re Net Data Centers, Inc., Debtor and Debtor-in-Possession, United States Bankruptcy Court for the Central District of California, Chapter 11 Case No. 2:15-bk-12690-BB [the "Chapter 11 Case"]), commenced on February 23, 2015, via negotiations,and including but not limited to one or more of the following means, e.g., recapitalization, asset sales, modification, assumption and potential assignments of leases, rejection of leases, equity investment or merger (collectively, a "Strategic Transaction"); and

WHEREAS, 321 is an enterprise specializing in entirety sales, strategic mergers, equity investments, joint ventures, debt and equity recapitalizations, purchases of chattel and real property, and sales of assets; and

WHEREAS, the Members of 321 have over thirty years of experience consulting with over 500 companies regarding business restructurings, locating and placing buyers, investors, debt, and joint venture partners in strategic transactions, selling as "going concerns" or otherwise disposing and refinancing of major properties, including both real and personal property and related owned or leased establishments, including bankruptcy and insolvency proceedings; and

WHEREAS, NDC and 321 desire to enter into this Agreement regarding certain services to be performed by 321 and the compensation to be earned by 321 for its services;

NOW THEREFORE, in consideration of the promises herein contained and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, NDC and 321 hereby agree, subject to all of the terms, covenants and conditions hereinafter set forth, as follows:

1. **EXCLUSIVE AGENCY.** NDC hereby retains 321 as its exclusive agent to utilize 321's database and NDC's provided leads to discretely and confidentially identify candidates to enter into a Strategic Transaction with NDC. The term of 321's exclusive agency shall begin as of the date of this Agreement and shall continue for one hundred twenty (120) days thereafter. This Agreement shall automatically be extended in 30-day increments, unless cancelled in writing prior to termination of the exclusive agency hereunder.

2. **SERVICES.** 321 shall perform the following services under this Agreement:

   (a) Work with CLIENT to create and develop a Strategic Transaction that will enable NDC to confirm and consummate a Plan of Reorganization in the Chapter 11 Case.

   (b) Conduct due diligence with respect to all potential candidates for a Strategic Transaction as described above.

   (c) Work with NDC and its professionals to create a plan with that will enable NDC to emerge successfully from its Chapter 11 Case.

   (d) Create a marketing plan to secure any necessary financing (debt or equity) in conjunction with the Strategic Transaction and the confirmation and consummation of a Plan of Reorganization in the Chapter 11 Case.

   (e) Create financial modeling to aid in the negotiation of a Plan of Reorganization in the Chapter 11 Case or with respect to a Strategic Transaction, including but not limited to a possible sale of NDC or other vehicle to enable NDC to exit from its Chapter 11 bankruptcy case.

   (f) Prepare marketing materials, confidential information memoranda and secure due diligence data room which will include information regarding the business of NDC. (NDC shall have final approval of all materials and their use).

   (g) Endeavor to locate parties who may have an interest in purchasing, investing in and/or refinancing the business.

   (h) Circulate materials to all parties in interest regarding the business.

   (i) Respond and, provide information, communicate and negotiate with, and obtain offers from interested parties, and make recommendations to NDC as to whether a particular offer should be accepted or subject to further negotiation.

   (j) Communicate regularly, including a weekly written report, with NDC in connection with the status of 321's marketing and other efforts.

   (k) Recommend to NDC the proper method of handling any specific problems encountered with respect to the marketing of the business.

   (l) Perform related services necessary to maximize the proceeds to be realized from a Strategic Transaction.

   (m) 321 shall have no authority to bind NDC to any agreements or offers.

321's services shall commence upon execution of the Agreement.

3. **OFFERING PROCEDURE.** NDC shall furnish information under a procedure that shall include the following:

   (a) All communications and inquiries regarding the business shall be directed to 321 for response.

   (b) In order to be considered, all offers must be accompanied by appropriate financial disclosures demonstrating the ability to close a transaction and shall include a deposit where deemed necessary.

   (c) NDC shall have the right to:

      (i) Determine in its sole discretion which offer is to be accepted; and

      (ii) Reject, at any time, any offer which, in NDC's sole discretion, is deemed to be inadequate or insufficient, or not in conformity with the terms and conditions of this Agreement.

   (d) NDC, upon notice to those parties which have submitted offers, may impose other terms and conditions it determines to be in its best interests.

4. **EXPENSES.** Out-of-pocket expenses are the responsibility of NDC, subject to a maximum amount of Seven Thousand Five Hundred Dollars ($7,500). These monies are strictly for marketing costs, such as printing, mailing, telephone and travel-related expenses to meet with bankers, equity and debt sources, and investors, and to provide due diligence materials to prospects. If 321's expenses exceed $7,500, any excess will be the responsibility of 321. These monies are due upon bankruptcy court approval of 321's retention.

5. **GROSS SALES PROCEEDS.** The term "Gross Sales Proceeds" as used in this Agreement shall include the sum of:

   (a) All cash payments;

   (b) All other payments, including but not limited to securities or other property;

   (c) Any deferred payments, including leases, earn-outs, licensing fees, employment or consulting agreements, or financing arrangements agreed to by NDC, and approved by the bankruptcy court; and

   (d) Assumptions of any debt, including but not limited to leases of real property, machinery and/or equipment, and/or vehicles.

The fees and expenses of 321, and all other closing costs and/or adjustments, including adjustments and/or payments of any kind to lienholders, secured parties, mortgages or other similar debt, shall not be deducted when calculating the Gross Sales Proceeds or the fee to be paid to 321 herein.

6. **321 FEE.** 321 shall be deemed to have earned and shall be paid in cash at settlement a
fee with respect to any Strategic Transaction, including refinancing, sale of equity or debt
securities, and/or sale(s) of assets of NDC. 321's fee shall be based upon the Gross Sales
Proceeds and computed using the following formula:

TWO PERCENT (2%) OF THE FILED AND COURT-APPROVED "STALKING
HORSE BID" with respect to NDC's data centers in New Jersey and Virginia, or as
otherwise negotiated and agreed to by NDC and 321

AND (plus)

TEN PERCENT (10%) OF THE DIFFERENCE BETWEEN THE FILED AND
COURT-APPROVED STALKING HORSE BID AND THE FINAL SALE PRICE with
respect to NDC's data centers in New Jersey and Virginia, or as otherwise negotiated
and agreed to by NDC and 321.

321 shall be entitled to its fee as defined above if a third party buyer purchases the NDC data
center leases in New Jersey and Virginia, or if a third party enters into another form of
Strategic Transaction as defined above, including the direct acquisition of debt from, or
claims held or asserted by, a secured creditor against or with respect to assets of NDC.
Furthermore, 321 shall be entitled to receive its fee arising from any purchase made or other
Strategic Transaction entered into following approval of the bankruptcy court (if NDC
remains under the jurisdiction of the bankruptcy court at the time of such Strategic
Transaction) within 12 months from the date of this Agreement by a prospect contacted
during the term of this Agreement. A prospect shall be considered a qualified lead contacted
by 321 during the exclusive engagement of 321 hereunder.

7. **NOTICES.** All notices, statements, demands, requests, consents, communications and
certificates from any party hereto to the other, shall be made and delivered in writing, sent
by United States registered mail or certified mail, return receipt requested, postage prepaid,
addressed as follows:

(a) If intended for NDC :                    (b) If intended for 321:

Pervez P. Delawalla                          Ervin M. Terwilliger
President and CEO                            Three Twenty One Capital Partners, Inc.
Net Data Centers, Inc.                       2205 Warwick Way
898 Sepulveda Boulevard, Fifth Floor         Suite 310
El Segundo, California 90245                 Marriottsville, MD 21104
Email: pervez@netdc.com                      Email: erv@321capital.com

or addressed to such other addresses or entities as either party hereto may from time to time
direct by service of notice on the other party as provided above. In addition to notices sent

by United States registered mail or certified mail, return receipt requested, postage prepaid, either party may also issue such notices via email, provided such notices are also sent by United States registered or certified mail, return receipt requested and postage prepaid, in order to facilitate faster communication of such notices.

8. **INDEMNIFICATION.** NDC will verify any and all qualifications of any party with whom or which it enters into a Strategic Transaction hereunder. 321 will not make or be responsible for any verifications or warranties, including, but not limited to, any counterparties' health, experience, competency, residency or financial status. 321 shall not be liable or responsible for, and is hereby indemnified and held harmless by NDC from and against any and all claims and/or damages of any kind relating to the above-referenced transactions, including but not limited to any and all claims and/or damages of every kind or nature attributable to the performance or non-performance of NDC and /or any counterparty in any such Strategic Transaction.

9. **NON-ASSIGNABILITY.** Neither party hereto shall assign this Agreement or any of its rights or interests hereunder without first obtaining the other party's written consent.

10. **TIME OF THE ESSENCE.** Time, whenever mentioned herein, shall be of the essence of this Agreement.

11. **ENTIRE AGREEMENT.** This is the entire Agreement between and among the parties hereto regarding the transaction contemplated hereby, and there are no other terms, covenants, conditions, provisions, warranties, representations or statements, oral or otherwise, of any kind whatsoever. Any agreement hereafter made shall be ineffective to change, modify, discharge or effect an abandonment of this Agreement in whole or in part unless such agreement is in writing and is signed by the party against whom the enforcement of the change, modification, discharge or abandonment is sought.

12. **HEADINGS.** The headings in this Agreement are for convenience and reference only and are not part of this Agreement, and shall not in any way control, define, limit or add to the terms and conditions hereof.

13. **GOVERNING LAW.** This Agreement shall be construed, interpreted and governed by the laws of the State of California.

14. **COUNTERPARTS.** This Agreement may be executed in any number of counterparts, each of which shall be an original, but such counterparts when taken together shall constitute but one and the same instrument.

15. **LEGAL CONSTRUCTION.** In case any one or more of the provisions contained in this Agreement shall for any reason be held to be invalid, illegal, or unenforceable in any respect, the invalidity, illegality or enforceability of such provision(s) shall not affect any other

provision(s) of this Agreement, and this Agreement shall be construed as if the invalid, illegal, or unenforceable provision had never been contained within it.

IN WITNESS WHEREOF, the parties hereto have duly executed this Agreement, as of the day and year first above written.

NET DATA CENTERS, INC.

THREE TWENTY ONE CAPITAL PARTNERS, LLC

By: _____

By: _____

Pervez P. Delawalla
President and CEO

Ervin M. Terwilliger
Managing Partner

[This contract is subject to Bankruptcy Court approval]

# **EXHIBIT B**

# **EXHIBIT B**

# Overview

*Three Twenty-One Capital Partners, Inc.*

Three Twenty-One Capital Partners is a Private Investment Bank with more than 30 years of experience servicing the middle-market, with a specific concentration in family-owned or "storied" situations.

Our team of investment banking professionals are all former or current business owners. Collectively our team has bought, sold, invested-in, or consulted over 500 companies, with over $7 billion in transaction value, in virtually every industry imaginable.



# Mission Statement

*Three Twenty-One Capital Partners, Inc.*

Three Twenty-One Capital Partners commits to drawing on our extensive experience as business owners and investment bankers, to provide superior solutions and advisory services to complex issues, by creating a focused and transparent process with the singular goal of reaching **the highest and best outcome for our client.**



# Insolvency Proceedings
## Clients Served

Three Twenty-One Capital's team has served debtors/business owners, creditors, creditors' committees and trustees in over 400 insolvency proceedings including:

- Chapter 11 Bankruptcy
- Chapter 7 Bankruptcy
- Assignment for the Benefit of Creditors (ABC's)
- Article 9 Foreclosures
- Bulk Sales
- Auctions





# Insolvency Proceedings
## Representative Transactions

### Chapter 11 Bankruptcy-
### 363 Sale

**PINNACLE**
FILMS
A GENERATION AHEAD

Pinnacle Films Inc.

363 Sale to

INTERPLAST GROUP

Inteplast Group Ltd.

**Sell Side**
**Investment Banker**

THREE TWENTY-ONE
CAPITAL PARTNERS

### Details of Engagement

➢ Co-Retained by Debtor and Creditors'
  Committee

➢ Three Twenty-One ran process to select
  stalking horse as well as subsequent
  Bankruptcy Auction

➢ Realized complete return to secured
  creditors and a 90% return to unsecured
  creditors

*"We would be pleased to work with Three Twenty-One
again on another tough bankruptcy case"*

Sharon Levine, Lowenstein Sandler PC, counsel to the official
committee of unsecured creditors



# "Storied" Situations
## Representative Transactions



**Sell Side Investment Banker**

SUNSTONE COMPONENTS GROUP

Sunstone Components Group

363 Sale to

PANCON CONNECTORS

Pancon Corporation

THREE TWENTY ONE

### Lack of Scale & Pricing Pressures

### Details of Engagement

➤ Tier II manufacturer of electrical components for the automotive industry that lacked the scale to maintain a pricing structure that was both profitable and acceptable to customers

➤ Core business was strong with blue-chip clients and a reputation for quality manufacturing

➤ After multiple forbearance agreements with bank, business was forced into Bankruptcy by unsecured creditors

➤ Ran a national process to secure stalking horse bidder, secured multiple bidders at auction and devised bidding procedures to insure the highest and best outcome

➤ Business was sold to a private equity backed strategic acquiror as a going concern after 28 rounds of bidding amongst 5 bidding parties at auction, well in excess of anticipated return to creditors



# Debt & Equity Placement

## Services

Three Twenty-One Capital has the industry experience and deep contacts in the finance-world, from Private Equity to Asset Based Lenders, to connect you with the best available options.

- ✔ Equity Sale
- ✔ Asset Based Lending
- ✔ Sale Lease Back
- ✔ Dividend Recapitalization
- ✔ Bridge Financing
- ✔ DIP Financing





# Debt & Equity Placement

## Representative Transactions

### Business Recapitalization



**American Graphic Board Inc.**

Recapitalization
Funded by

SUMMITFR

**Financial Advisor**

THREE TWENTY ONE

### Engagement Details

➢ Engaged by client to find replacement for conventional lender wishing to exit credit

➢ Competed 5 lending opportunities to secure the best possible recapitalization of the business

➢ Closed on a working line of credit, term loan and discounted payoff to the pre-existing conventional lender



# Advisory Services:
## Debtor Restructuring

- Debtor Restructuring Services Include:

  - Independent Business Viability Assessment

  - Process Advisory Consulting

  - Business/Asset Valuation

  - Management Oversight & Advisory Services

  - Seasoned CRO, CEO, CFO, COO Professionals with

    - Extensive Turnaround and operational experience

  - Focus on maximizing creditor outcomes before, during and after default crisis/bankruptcy





# Advisory Services:
# Representative Transactions

Business Valuation /
Ch. 11 plan consultation



## The Official Committee of Unsecured Creditors of

Restructuring Advisory Services



**Financial Advisor**

THREE TWENTY-ONE
CAPITAL PARTNERS

## Details of Engagement

➤ Retained by the Creditor's Committee to conduct a business viability and valuation analysis in order to evaluate a plan of reorganization sponsored by the current owner

➤ Three Twenty-One Capital's findings helped the Creditor's Committee and Sponsor negotiate a plan of reorganization

➤ Business exited bankruptcy and continued operations



# Advisory Services:
## Crisis Process Consulting

- Process Consulting Services before, during and after default crisis:

  - Debtor, Trustee, Secured Creditor and Creditors' Committee Advisory Services

  - Valuation/Viability Assessment

  - Sale or Refinance Process Advisory Consulting

  - Bankruptcy Sale Advisory Services including:
    - Solicitation and Negotiation of Stalking Horse
    - Bidding Procedures
    - Notification and documentation





# Investment Banking Model

Three Twenty-One's investment banking model revolves around the needs of our clientele. Three Twenty-One Capital aligns its interests with our clients' interests, utilizing a contingency-based model driven by results, not retainers.

- 90 Day Exclusive Engagement

- Contingency-driven compensation model

- Intensely focused, global marketing campaign, designed to target every qualified buyer/investor

- Transparent process that involves weekly status reports to all parties in interest

- Exhaustive search for the highest and best outcome



# Ervin M. Terwilliger

*Managing Partner*



Ervin is the Founder and Managing Partner of Three Twenty-One Capital Partners, a boutique investment banking firm that specializes in Mergers and Acquisitions for privately held companies with a specific concentration in "Storied" Situations.

Ervin has been featured in manufacturing industry magazines and online publications providing financial insight on various U.S. Industry Sectors and the M&A Landscape.

Ervin has completed over 100 transactions in and out of Bankruptcy Court. Previous clients include Select Stainless, AERT, Pinnacle Films, Eagle One Golf, Roper Whitney, Ebbtide Boats, Basic Line, and Searle.

Ervin sat on the Board of Directors for international manufacturing concerns, as well as held interim positions as President and Vice President for Food, Beverage and Health & Beauty Products manufacturers.

Ervin is a relied upon valuation, process and sales expert witness in U.S. Bankruptcy Courts as well as Member of The American Bankruptcy Institute and Turnaround Management Association. Ervin has worked with hundreds of owners and creditors to maximize outcomes in distressed business transactions.

Ervin graduated from the University of Delaware with a Bachelor's of Science in Business Administration in Management and Marketing.



# Erik Endler, CFA

*Senior Partner*



Erik is a former Executive Director in Oppenheimer's Consumer and Business Services Investment Banking group, former Director at CIBC World Markets and Analyst with Deutsche Banc Alex Brown.

Erik's transactional experience spans the consumer products, retail, technology, e-commerce, direct marketing, manufacturing, rental services, professional services, and restaurant sub-sectors.

Erik has completed over 40 deals representing in excess of $7 billion in transaction value. Clients have included companies such as Bare Escentuals, the Brickman Group, Carbonite, Connolly Consulting, Constant Contact, Contigo, Design Within Reach, Jarden and Vitacost to name a few.

Erik graduated with highest honors from the University of Notre Dame with a BBA in Finance and Computer Applications.





# THREE TWENTY-ONE
## — CAPITAL PARTNERS —

Phone: 443-325-5290
www.321capital.com

# **EXHIBIT C**

# **EXHIBIT C**

1  PAUL A. BECK, ESQ. (SBN 79760)
   LAW OFFICES OF PAUL A. BECK
2  A PROFESSIONAL CORPORATION
   13701 Riverside Drive, Suite 701
3  Los Angeles, California 91423-22499
   Tel: (818) 501-1141; Fax: (818) 501-1241
4  Email: pab@pablaw.org

5  Attorneys for Debtor and Proposed
   Attorneys for Debtor-in-Possession,
6  Net Data Centers, Inc.

7

8                    UNITED STATES BANKRUPTCY COURT

9                    CENTRAL DISTRICT OF CALIFORNIA

10                        LOS ANGELES DIVISION

11
   In re                                    Case No. 2:15-bk-12690-BB
12
                                            Chapter 11
13
   NET DATA CENTERS, INC.,
14                                          **NOTICE OF FILING OF**
                                            **APPLICATION FOR ORDER**
15                                          **AUTHORIZING THE EMPLOYMENT**
                 Debtor.                    **AND RETENTION OF 321 CAPITAL**
16                                          **PARTNERS, LLC, AS DEBTOR'S**
                                            **BANKING CONSULTANTS**
17
                                            [No Hearing Required]
18
                                            [Local Bankruptcy Rule 2014-1]
19

20          **TO: THE HONORABLE SHERI BLUEBOND, UNITED STATES**

21  **BANKRUPTCY JUDGE; THE OFFICE OF THE UNITED STATES TRUSTEE; THE**

22  **DEBTOR'S SECURED CREDITORS; THE OFFICIAL COMMITTEE OF CREDITORS**

23  **HOLDING UNSECURED CLAIMS, AND ITS ATTORNEYS OF RECORD; AND TO ALL**

24  **PARTIES REQUESTING SPECIAL NOTICE HEREIN:**

25          **PLEASE TAKE NOTICE** that on May 27, 2015, NET DATA CENTERS, Inc.,

26  the Debtor and Debtor-in-Possession in the above-captioned Chapter 11 bankruptcy case

27  (hereinafter, the "Debtor"), filed with the Court and submitted to the Office of the United

28  States Trustee its "Application of Debtor and Debtor in Possession for Order Authorizing

Employment of 321 Capital Partners, LLC, as Debtor's Investment Banking Consultants,
and the Declaration of Ervin Terwilliger in Support Thereof (the "321 Capital Application"),
pursuant to Title 11, United States Code, §§ 327(a), 328(a), and 1107 (the "Bankruptcy
Code"), Federal Rule of Bankruptcy Procedure 2014(a), and Local Bankruptcy Rule 2014-
1.

The 321 Capital Application requests that this Court enter an order
authorizing the Debtor to employ 321 Capital as its investment banking consultants
effective as of May 11, 2015.

Following the commencement of the Chapter 11 case, the Debtor
determined that 321 Capital's knowledge and experience, as well as its compensation
structure, were well-suited for its retention by the Debtor and, therefore, decided to
engage 321 Capital as its investment banking consultants, subject to the approval of the
Court.  321 Capital specializes in strategic transactions and is well qualified to consult
with and assist the Debtor.  Other than an initial out-of-pocket expense outlay of $7,500,
all of 321 Capital's compensation will be based upon the closing of a strategic
transaction approved by the Bankruptcy Court, as further defined in the 321 Capital
Application.  321 Capital is also disinterested as that term is defined in the Bankruptcy
Code.

Copies of the 321 Capital Application may be obtained from the Clerk's
Office and/or from Paul A. Beck, whose address is in the upper left-hand corner on the first
page of this Notice.

**PLEASE TAKE FURTHER NOTICE** that, pursuant to Local Bankruptcy Rule
2014-1(b)(3)(E), any response or opposition to the 321 Capital Application and/or any
request for a hearing thereon must be made in the form required by Local Bankruptcy Rule
9013-1(f)(1) and must be filed with the Court and served upon Paul A. Beck, Law Offices
of Paul A. Beck, A Professional Corporation, 13701 Riverside Drive, Suite 701, Sherman
Oaks, California 91423-2499, and upon the Office of the United States Trustee, no later
than 14 days from the date of service of this Notice.

1

1       **PLEASE TAKE FURTHER NOTICE** that pursuant to Local Bankruptcy Rule

2 9013-1(h), the failure to timely file and serve an objection or request for hearing may be

3 deemed by the Court to be consent to the relief requested.

4

5 Dated: May 27, 2015             Law Offices of Paul A. Beck

6                               A Professional Corporation

7

8                               By:＿＿ /s/ Paul A. Beck＿＿＿＿＿

9                                   Paul A. Beck
Attorneys for Debtor and Proposed Attorneys
for Debtor-in-Possession, Net Data Centers,

10                                   Inc.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PROOF OF SERVICE

STATE OF CALIFORNIA, COUNTY OF LOS ANGELES:

I am employed in the County of Los Angeles, State of California.  I am over the age of 18 and not a party to the within action; my business address is 13701 Riverside Drive, Suite 701, Sherman Oaks, California 91423.

On May 27, 2015, I served the foregoing document described as **APPLICATION OF DEBTOR AND DEBTOR-IN-POSSESSION FOR ORDER AUTHORIZING EMPLOYMENT OF 321 CAPITAL PARTNERS, LLC AS INVESTMENT BANKING CONSULTANTS; DECLARATION OF ERVIN M. TERWILLIGER IN SUPPORT THEREOF** on the interested parties in this action:

X    by placing the true copies thereof enclosed in sealed envelopes addressed as stated on the attached mailing list:

_    by placing _ the original _ a true copy thereof enclosed in sealed envelopes addressed as follows:

**X    BY MAIL** – See Attached Service List

**X    TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF):**

Robert L. Eisenbach - reisenback@cooley.com; Rick Montfort - rmontfort@dft.com; Ivan M. Gold - igold@allenmatkins.com; William F. Govier - wgovier@lesnickprince.com, tmims@lesnickprince.com; Michael S. Greger - mgreger@allenmatkins.com; Brian L. Holman b.holman@mlpglaw.com; Matthew A. Lesnick - matt@lesnickprince.com, tmims@lesnickprince.com; Ron Maroko - ron.maroko@usdoj.gov; Wayne R. Terry - wterry@hemar-rousso.com; US Trustee (LA) - ustpregion16.la.ecf@usdoj.gov; Lesley Anne Hawes - lhawes@mckennalong.com; Ronald K. Brown - rkbgwhw@aol.com; Mette H. Kurth - mkurth@foxrothschild.com; Jessica Peterson - jpeterson@djplaw.com; George Hofmann IV - ghofmann@cohnekinghorn.com; Aaron Locher - Aaron@stratacore.com; Chandrashekar Akiti - shekar@nscube.com; Jordan Cohen - Jordan.s.cohen@wellsfargo.com;  Susan Davis - sdavis@coxcastle.com; Lewis Landau - lew@landaunet.com; Brian Harvey - bharvey@buchalter.com; Steven Spector - sspector@buchalter.com

_    I deposited such envelope in the mail at Sherman Oaks, California

X    As follows:  I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing.  Under that practice it would be deposited with U.S. Postal Service on that same day with postage thereon fully prepaid at Sherman Oaks, California in the ordinary course of business.  I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

Executed on May 27, 2015, at Sherman Oaks, California.

X (Federal)    I declare that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

_Raychael Trear_
Raychael Trear

1

Application for Order Authorizing Employment of 321 Capital Partners, LLC

1

## SERVICE LIST

2

3 | Honorable Sheri Bluebond, Chief Judge          Assigned Judge
United States Bankruptcy Court
Central District of California
4 | Edward R. Roybal Federal Building and Courthouse
255 E. Temple Street, Suite 1482 / Courtroom 1475
5 | Los Angeles, CA 90012

6 | Net Data Centers, Inc.          Debtor and Debtor-in-Possession
Attn: Pervez P. Delawalla
7 | 898 Sepulveda Blvd
El Segundo, CA 90245

8

Office of the United States Trustee          United States Trustee
9 | Attn: Ron Maroko, Staff Attorney
915 Wilshire Blvd., Suite 1850
10 | Los Angeles, CA 90017

11 | Matthew A. Lesnick          Former Attorneys for Debtor and
William F. Govier          Debtor-in- Possession
12 | Lesnick Prince & Pappas LLP
315 W. 9th Street, Suite 705
13 | Los Angeles, CA 90015

14 | **Creditors Holding Secured Claims**

15 | Citibank, N.A.
c/o CitiCorp North America, Inc.
16 | 3800 Citibank Center, Building B, 3rd Floor
Tampa, FL 33610

17

18 | **Official Committee of Creditors Holding Unsecured Claims**

19 | Stratacore, Inc.
Attn: Aaron Locher
2320 2nd Ave., Suite 2100
20 | Seattle, WA 98121

21 | NSCUBE LLC
Attn: Chandrashekar Akiti
22 | 3223 Bagley Ave., Apt. 216
Los Angeles, CA 90034

23

Charter Holdings, Inc.
24 | Attn: Jordan Cohen, Esq.
Wells Fargo Bank, N.A.
25 | Law Department
MAC E2064-106
26 | 333 South Grand Avenue, Suite 1040
Los Angeles, CA 90071

27

28

Application for Order Authorizing Employment of 321 Capital Partners, LLC

1

**<u>Interested Parties Requesting Special Notice</u>**

2   Jessica G. Peterson
    Durham Jones & Pinegar, P.C.
3   111 East Broadway, Suite 900
    PO Box 4050
4   Salt Lake City, UT 84110-4050

5   George B. Hofmann IV
    Cohne Kinghorn, P.C.
6   111 East Broadway, 11th Floor
    Salt Lake City, UT 84111

7
    Daren M. Schlecter, Esq.
8   Law Office of Daren M. Schlecter
    1925 Century Park East, Suite 830
9   Los Angeles, CA 90067

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Application for Order Authorizing Employment of 321 Capital Partners, LLC