| Attorney or Party Name, Address, Telephone & FAX Nos., State Bar No. & Email Address | FOR COURT USE ONLY |
|---|---|
| Paul A. Beck (SBN 79760)<br>pab@pablaw.org<br>Lewis R. Landau (SBN 143391)<br>lew@landaunet.com<br>Law Offices of Paul A. Beck, APC<br>13701 Riverside Drive, Suite 701<br>Sherman Oaks, California 91423<br>Tel:  (818) 501-1141<br>Fax: (818) 501-1241<br><br>☐ *Individual appearing without attorney*<br>☒ *Attorney for:* Debtor | |

## UNITED STATES BANKRUPTCY COURT
## CENTRAL DISTRICT OF CALIFORNIA - LOS ANGELES DIVISION

| In re:<br><br>Net Data Centers, Inc. | CASE NO.: 2:15-bk-12690-BB<br>CHAPTER: 11 |
|---|---|
| | **NOTICE OF MOTION FOR:**<br><br>ORDER APPROVING 120 DAY EXTENSION OF EXCLUSIVITY PERIODS<br><br><br>*(Specify name of Motion)* |
| Debtor(s). | DATE: 06/17/2015<br>TIME:  10:00 am<br>COURTROOM: Courtroom 1475; Judge Bluebond<br>PLACE: US Bankruptcy Court<br>     255 E. Temple Street, 14th Floor<br>     Los Angeles, CA 90012 |

1. TO (*specify name*):  All Parties In Interest

2. NOTICE IS HEREBY GIVEN that on the following date and time and in the indicated courtroom, Movant in the above-captioned matter will move this court for an Order granting the relief sought as set forth in the Motion and accompanying supporting documents served and filed herewith. Said Motion is based upon the grounds set forth in the attached Motion and accompanying documents.

3. **Your rights may be affected**. You should read these papers carefully and discuss them with your attorney, if you have one. (If you do not have an attorney, you may wish to consult one.)

This form is mandatory.  It has been approved for use in the United States Bankruptcy Court for the Central District of California.

4.  **Deadline for Opposition Papers:** This Motion is being heard on regular notice pursuant to LBR 9013-1. If you wish to oppose this Motion, you must file a written response with the court and serve a copy of it upon the Movant or Movant's attorney at the address set forth above no less than fourteen (14) days prior to the above hearing date.  If you fail to file a written response to this Motion within such time period, the court may treat such failure as a waiver of your right to oppose the Motion and may grant the requested relief.

5.  **Hearing Date Obtained Pursuant to Judge's Self-Calendaring Procedure:** The undersigned hereby verifies that the above hearing date and time were available for this type of Motion according to the judge's self-calendaring procedures.

Date:  05/27/2015

Law Offices of Paul A. Beck, APC
Printed name of law firm

/s/ Lewis R. Landau
Signature

Lewis R. Landau
Printed name of attorney

This form is mandatory.  It has been approved for use in the United States Bankruptcy Court for the Central District of California.

December 2012                                    Page 2                          F 9013-1.1.HEARING.NOTICE

1  **Paul A. Beck** (SBN 79760)
   *pab@pablaw.org*
2  **Lewis R. Landau** (SBN 143391)
   *lew@landaunet.com*
3  **Law Offices of Paul A. Beck, APC**
   13701 Riverside Drive, Suite 701
4  Sherman Oaks, California 91423
   Tel:  (818) 501-1141
5  Fax: (818) 501-1241

6  Attorneys for Debtor and Debtor in Possession
   Net Data Centers, Inc.

7
                    **UNITED STATES BANKRUPTCY COURT**
8
                    **CENTRAL DISTRICT OF CALIFORNIA**
9
                         **LOS ANGELES DIVISION**
10

11
   In re                                    Case No.: 2:15-bk-12690-BB
12
   Net Data Centers, Inc.,                  Chapter 11
13
                    Debtor.                 **MOTION FOR ORDER GRANTING 120**
14                                          **DAY EXTENSION OF EXCLUSIVITY**
                                            **PERIODS; DECLARATION OF PERVEZ**
15                                          **P. DELAWALLA IN SUPPORT THEREOF**
                                            **[11 U.S.C. § 1121(d)]**
16
                                            Date:      June 17, 2015
17                                          Time:      10:00 a.m.
                                            Place:     Courtroom 1475; Judge Bluebond
18                                                     U.S. Bankruptcy Court
                                                       255 E. Temple Street, 14th Floor
19                                                     Los Angeles, CA 90012

20         Net Data Centers, Inc. ("Debtor"), Debtor in Possession in the within Chapter 11 case,

21  herein moves for an order granting an extension of the Debtor's plan filing and plan acceptance

22  exclusivity periods (the "Motion"), pursuant to 11 U.S.C. § 1121(d), for 120 days each, thus

23  advancing the plan filing and plan acceptance exclusivity periods to Wednesday, October 21,

24  2015, and Monday, December 21, 2015, respectively.

25         The specific details of the Debtor's Motion to extend its exclusivity periods are set forth in

26  the following memorandum of points and authorities, as supported by the attached Declaration of

27  Pervez P. Delawalla ("Delawalla Declaration") and the exhibits attached thereto and referenced

28  herein.  Notice of this motion is given per Local Bankruptcy Form F9013-1.1 attached hereto.

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.

## INTRODUCTION, CASE SUMMARY AND

## STATUS OF REORGANIZATION EFFORTS

On February 23, 2015, the Debtor filed a voluntary chapter 11 petition.  The Debtor continues to manage and operate its business as a debtor in possession pursuant to 11 U.S.C. §§ 1107 and 1108.  On April 24, 2015 an Official Committee of Creditors Holding Unsecured Claims ("Committee") was appointed.  *See*, ECF 79.

The Debtor is an internet-based data center service provider delivering redundant power, cooling, network connectivity and managed services within its data center locations.  The Debtor provides access to internet-based applications, providing critical file and data storage and related services directly to its customers.  Leading social networks, enterprises, finance, content companies, and communications service providers rely on the Debtor's services for uninterrupted operations to support their applications.  Additional information about the Debtor's operations and management is available on its website at *www.netdatacenters.com*.

The Debtor is a party to 9 unexpired leases of non-residential real property, on which it operates eight (8) data centers, four (4) in New Jersey and Virginia (involving five (5) leases), and four (4) in Los Angeles County (involving three (3) leases), and a corporate office located in El Segundo, California.  The Debtor's various data centers host over 170 of its clients' databases of critical operating data, to which their customers and clients must have continuous, immediate and seamless access at all times, 24 hours a day, 7 days a week.  The Debtor manages the business operations of its data centers, collects customers' service agreement and lease payments, services its customers' needs at each data center location, and pays the expenses of operating and managing the data centers.  The Debtor generates its revenues primarily from its customers' managed service agreements.

The Debtor's customers, in turn, sublease space and power from the Debtor pursuant to and governed by the Debtor's Master Service Agreements.  Since the leases were entered into at the height of the data center real estate market approximately 8 years ago, the Debtor's leases with

its landlords are all at rates that are significantly higher than current fair market values, and that is the essence of the Debtor's current financial dilemma. If the landlords' leases can be restructured to reflect current market conditions and to accommodate the Debtor's current capacity requirements, the Debtor can operate profitably and propose a plan of reorganization that would enable the Debtor both to assume the restructured leases and to repay prepetition debt to the landlords as part of a confirmed plan. If the landlords' leases cannot be restructured in such a manner, the Debtor inevitably faces the prospect of being required to reject certain of its least profitable leases unless it can locate a suitable purchaser for the affected locations.

As of the Petition Date, the Debtor holds assets valued at approximately $9.5 million and liabilities totaling approximately $17.4 million on a balance sheet basis. However, the Debtor's operating margins are far more closely balanced, and the Debtor clearly has the capacity to operate profitably depending upon its ability to restructure its leases to reflect current fair market values and to meet its current capacity requirements. The Debtor determined that it had to commence its Chapter 11 case because its restructuring efforts with one of its landlords had foundered, and the landlord determined that it would no longer forbear from declaring a default and that it would proceed with notices to pay or quit. The Debtor concluded it had no choice but to file Chapter 11 in order to stave off the landlord's potential eviction.

Thus, the major issues and problems which must be addressed and resolved in the Chapter 11 case include the following:

1. As referenced above, the Debtor intends to utilize the Chapter 11 case to restructure its over-market leases with its landlords and to successfully reorganize. The Debtor believes that these leases can and should be adjusted to reflect current market conditions and capacity requirements, which would enable the Debtor to reorganize and operate profitably, and thereby to repay its creditors under a confirmed plan of reorganization as it emerges from the bankruptcy case. The Debtor believes this result would be in the best interests of the bankruptcy estate and of all of its creditors.

2. The Debtor intends to propose and confirm a plan designed to pay allowed claims based on the Debtor's projections with respect to anticipated revenues over the course of the next

three to five years.  The Debtor intends to utilize its profitable operating revenues to make pro rata payments to its unsecured creditors, after paying its allowed priority and administrative claims in full.

3.      The principal disputes or problems which must be addressed and resolved in the context of the anticipated reorganization involve the Debtor's negotiations with its four landlords. In addition to the landlords' prepetition notes and unsecured claims, which represent the largest claims in the estate, the Debtor must successfully restructure its ongoing data center leases in order to be able to assume them.  Those leases which cannot be restructured will in all likelihood be assigned or rejected.  Rejection damages claims of the landlords are then subject to § 502(b)(6) of the Code.   However, if the Debtor is able to successfully restructure some or all of its leases, it believes it will be able to propose, confirm and consummate a plan of reorganization that will lead to payment on account of its creditors' claims.

The Debtor proposes to continue its ongoing negotiations with its landlords, which began prior to the commencement of the bankruptcy case.  The Debtor's negotiations have advanced to the point of exchanging term sheets with several of its landlords.  The Debtor continues to analyze the current market conditions and its projected operating revenues and expenses in order to carry its negotiations forward.  Ultimately, the Debtor recognizes that it must either move to assume the leases, as proposed to be modified, or reject them.

The timing of the Debtor's lease restructuring efforts is paramount.  The longer the process takes, the more difficult it will be to successfully reorganize as the over-market leases are diminishing the Debtor's liquidity.  The Debtor has accelerated the negotiating process and hopes to achieve agreements on modified leases with its respective landlords in June 2015.  Immediately following the April 15, 2015 Chapter 11 status conference, the Debtor, through its CEO and counsel, met with counsel for DupontFabros Technology ("DFT"), the Debtor's single largest landlord and the single largest creditor of the Chapter 11 estate.  In that meeting, the Debtor described its ongoing negotiations with at least one suitor and the anticipated execution of a letter of intent with that suitor, which would in turn lead to direct negotiations between DFT, the Debtor and the suitor.

Thereafter, on May 11, 2015, the Debtor engaged the services of an investment banker, 321 Capital Partners, LLC ("321 Capital"), as its exclusive agent to utilize 321 Capital's database and Debtor's leads to identify candidates to enter into a "Strategic Transaction" with the Debtor. The term of 321's exclusive agency began as of the date of its engagement and shall continue for one hundred twenty (120) days, with automatic extensions thereafter unless cancelled or otherwise agreed.  The contemplated "Strategic Transaction" includes but is not limited to asset sales and acquisitions, financing (debt or equity), or another vehicle that would enable the Debtor to emerge from its Chapter 11 case.  As the first stage in its process, 321 Capital has already prepared marketing materials and confidential information memoranda, and has also secured a due diligence data room which includes vital information regarding the business of the Debtor.

The second stage of 321 Capital's process requires it to locate parties who may have an interest in purchasing assets, or in investing in and/or refinancing the business.  That process is also underway.  Thereafter, 321 Capital shall perform related services necessary to maximizing the proceeds to be realized from any such "Strategic Transaction."  The Debtor's application to employ 321 Capital as its investment banker is pending Court approval.  *See*, ECF # 115.

In addition to its efforts to negotiate a modification of the over-market rate leases of its East Coast leases with DFT, the Debtor has also been engaged in discussions with representatives of GIP 7th Street, Inc. (an affiliate of Digital Realty Trust ("DRT") and Charter Holdings, Inc. ("Charter") regarding the negotiation of modifications to the over-market rate leases of certain of its West Coast leases with DRT and Charter during the past 30 days, while it analyzes the latest available data regarding appropriate lease rates for its local data centers and its cashflow requirements for the continued maintenance of its operations.

The Debtor intends to seek approval of a disclosure statement and confirmation of a plan of reorganization that will be designed to pay allowed claims and interests.  The Debtor intends to utilize the proceeds of its business plan to allocate pro rata payments to its unsecured creditors, after paying priority and administrative claims in full.  The Debtor intends to propose a disclosure statement and plan of reorganization based on appropriate projections with respect to its anticipated revenues over the course of the next three to five years.

1    Maintaining exclusivity for an additional 120 days will facilitate moving the case forward

2    toward a fair and equitable resolution.  A 120-day extension will advance the plan filing and plan

3    acceptance exclusivity periods to Wednesday, October 21, 2015, and Monday, December 21,

4    2015, respectively.  For all of these reasons, the Debtor respectfully requests an order approving

5    extensions of the Debtor's plan filing and plan acceptance exclusivity periods pursuant to 11

6    U.S.C. § 1121(d) for 120 days each.

7    **II.**

8    **A 120 DAY EXTENSION OF THE EXCLUSIVITY PERIODS IS WARRANTED**

9    **TO FACILITATE MOVING THE CASE FORWARD TOWARD**

10    **A FAIR AND EQUITABLE RESOLUTION**

11    The Ninth Circuit Bankruptcy Appellate Panel ("BAP") has held that "a transcendent

12    consideration [in a § 1121(d) motion] is whether adjustment of exclusivity ***will facilitate moving***

13    ***the case forward toward a fair and equitable resolution***."  Official Committee of Unsecured

14    Creditors v. Henry Mayo Newhall Memorial Hospital (In re Henry Mayo Newhall Memorial

15    Hospital), 282 B.R. 444 (B.A.P. 9th Cir. 2002) (emphasis added).  The BAP in Henry Mayo

16    identified the following nine (9) factors typically considered as probative of "cause" to extend a

17    debtor's exclusivity periods:

18    (1) a first extension;

19    (2) in a complicated case;

20    (3) that had not been pending for a long time, relative to its size and complexity;

21    (4) in which the debtor did not appear to be proceeding in bad faith;

22    (5) had improved operating revenues so that it was paying current expenses;

23    (6) had shown a reasonable prospect for filing a viable plan;

24    (7) was making satisfactory progress negotiating with key creditors;

25    (8) did not appear to be seeking an extension of exclusivity to pressure creditors; and

26    (9) was not depriving the Committee of material or relevant information.

Id., 282 B.R. at 452; *citing*, In re Dow Corning Corp., 208 B.R. 661, 664-65 (Bankr. E.D. Mich.

27    1997); In re Express One Int'l, Inc., 194 B.R. 98, 100 (Bankr. E.D. Tex.1996).

28

Herein, an analysis of these nine factors supports an initial 120-day extension of the exclusivity periods, as follows:

**1. A First Extension.**

The within request to extend exclusivity constitutes the Debtor's first such request. The Debtor is concurrently seeking a 90-day extension of the Debtor's time to assume or reject its real estate leases. This extension is reasonable as it is tied to resolving pending lease-related issues. Fundamental plan-related terms cannot be determined until cashflow is stabilized, based on proposed rent reductions, and all claims are fixed and ascertained. The requested 120-day extension should be sufficient to allow these fundamental case contingencies to be determined.

**2. Complicated Case Aspects.**

Although this is not a "mega case," the Debtor's Chapter 11 case clearly involves complicated "case aspects" that create complexity with respect to advancing the case through a chapter 11 plan at this point in time. The Debtor must conclude its negotiations with each of the landlords to determine if consensual rent reductions are possible, and if not, the Debtor must then determine which Leases to reject. It is obvious that Lease assumptions and rejections will directly impact the available chapter 11 plan distributions and cashflow, and the quantum of rejection damages claims under 11 U.S.C. §502(b)(6).

Ascertaining a fixed and final schedule of claims to be addressed under the Debtor's anticipated plan of reorganization is a fundamental aspect of plan preparation and will determine the term of any plan that is designed to pay allowed claims in full. The requested exclusivity extension will presumably provide the Debtor with sufficient time to conclude its lease negotiations and related matters involving the landlords (including mitigation of rejection damages claims, if and as applicable), to reconcile claims after the bar date has passed, to file any objections to claims, and to draft and propose its chapter 11 plan. The requested extension of exclusivity is reasonable in view of these complicated aspects of the Debtor's Chapter 11 case.

**3. Not Pending for Long Relative to Complexity.**

As described above, the complexity in this case arises from the complex issues posed by the Debtor's over market leases. As negotiations continue with the landlords, the Debtor will need

to strategically determine how best to maximize value for the estate through negotiated resolutions with some or all of the lessors or it will need to unilaterally move to eliminate the most burdensome leases and discontinue paying the over-market rental rates charged by the landlords. To the extent any of the leases are terminated, arrangements must be undertaken and successfully concluded with the landlords to remove the Debtor's valuable equipment that is located within the respective leased premises, and to transition the Debtor's valuable customer relationships in order to avoid any possibility of service interruptions. The Chapter 11 case has not been pending long relative to the contingency creating this particular case complexity.

**4. Debtor Not Proceeding in Bad Faith.**

The Debtor is not proceeding in bad faith. The facts of the Debtor's case strongly point to the contrary conclusion, i.e., that the Debtor is proceeding in good faith, making all required disclosures and demonstrating its transparency and desire to facilitate a resolution which will inure to the benefit of all of its general unsecured creditors. Avoiding liquidations is a fundamental purpose underlying chapter 11. The principal purposes of chapter 11 reorganization have been summarized by the Ninth Circuit Court of Appeals as follows:

> Chapter 11 has two major objectives 1) to permit successful rehabilitation of debtors (NLRB v. Bildisco and Bildisco, 465 U.S. 513, 527, 79 L. Ed. 2d 482, 104 S. Ct. 1188 (1984)); and 2) to maximize the value of the estate (Toibb v. Radloff, 115 L. Ed. 2d 145, 111 S. Ct. 2197, 2201 (1991)).
> ……
> [W]hile the protection of creditors' interests is an important purpose under Chapter 11, the Supreme Court has made clear that successful debtor reorganization and maximization of the value of the estate are the primary purposes.  See Bildisco, 465 U.S. at 527; Toibb v. Radloff, 111 S. Ct. at 2201.  Chapter 11 is designed to avoid liquidations under Chapter 7, since liquidations may have a negative impact on jobs, suppliers of the business, and the economy as a whole.  See United States v. Whiting Pools, Inc., 462 U.S. 198, 203, 76 L. Ed. 2d 515, 103 S. Ct. 2309 (1983).

Bonner Mall Partnership v. U.S. Bancorp Mortgage Co. (In re Bonner Mall Partnership), 2 F.3d 899, 915-916 (9th Cir. 1993), cert. granted, 510 U.S. 1039, vacatur denied and appeal dism'd as moot, 513 U.S. 18 (1994).  The Debtor's case fulfills the primary purposes of chapter 11 and

clearly was filed in good faith.  Such good faith will continue into the Debtor's plan proposal, which will be developed over the extended exclusivity period.

**5. Improved Operating Revenues and Paying Current Expenses.**

The Debtor is operating profitably post-petition, but its over-market rents are diminishing its operating revenues.  *See*, ECF # 69 (cash flow supplement to Debtor's chapter 11 status report). The Debtor has paid all post-petition rent due to its landlords to date, but it will need to immediately resolve its lease-related negotiations to reduce its over-market rents, or it will have no alternative but to commence lease rejection proceedings to support its continued liquidity.

**6. Reasonable Prospect for Filing a Viable Plan.**

The Debtor has a reasonable prospect for filing a viable plan.  The Debtor's cash flow statement reflects the Debtor's ability to generate revenues to support a plan.  The Debtor will need to strategically determine how best to maximize value for the estate through negotiated resolutions with some or all of its data center lessors, or it will need to unilaterally move to eliminate its most burdensome leases and discontinue paying the over-market rents.  To the extent that any of the Leases are terminated, arrangements must be concluded to remove the Debtor's valuable equipment that is located within the leased premises and transition its valuable customer relationships in order to avoid any possibility of service interruptions to the affected customers and clients.  All of this complex strategic planning is in process and requires additional time to reasonably conclude in the best interests of the estate.

**7. Making Satisfactory Progress Negotiating with Key Creditors.**

The Debtor is earnestly working both to maintain satisfactory relationships and to make progress with its key creditors and customers.  To date, the Debtor has remained current on all of its post-petition obligations, including paying the over-market rents to its lessors.  The Debtor also has engaged its key creditor landlords in negotiations to attempt to consensually develop a business plan.  Furthermore, the Debtor has cooperated with the Creditors' Committee in its efforts properly to administer the chapter 11 estate.  Early in May, the Debtor took steps to retain an investment banker to assist the Debtor in developing turnaround plans.  Thus, the Debtor

believes it has made satisfactory progress in negotiations with its key creditors sufficient to warrant the extension of exclusivity it has requested herein.

**8. Not Seeking an Extension of Exclusivity to Pressure Creditors.**

The Debtor is seeking a 120-day extension of exclusivity consistently with its concurrently pending request for a 90-day extension of the Debtor's time to assume or reject its real estate leases. The instant extension as requested by this Motion seeks to retain exclusivity and the *status quo,* and thereby avoid the cost and expense of competing plans while fundamental case contingencies related to the Debtor's real property leases are in the process of being addressed and resolved.

**9. Not Depriving the Committee of Material or Relevant Information.**

The Debtor has remained current with respect to all of its United States Trustee ("UST") reporting requirements and the filing of its UST Monthly Operating Reports. The Debtor has maintained cooperation with the Creditors' Committee regarding the administration of the Chapter 11 case, and has responded affirmatively to any and all requests for information or documentation presented to it by the Creditors' Committee counsel. The Debtor is, therefore, duly meeting all of its disclosure requirements and is not depriving the creditors of any material or relevant information.

Accordingly, the Debtor is making good faith progress toward proposing a confirmable chapter 11 plan of reorganization. The Debtor's case is in good standing before the Court and with respect to its compliance with the UST Guidelines and all other compliance UST and Bankruptcy Court requirements. Maintaining exclusivity for an additional 120 days will facilitate moving the case forward toward a fair and equitable resolution.    For all of these reasons, the Debtor respectfully requests an order approving the extensions of the Debtor's plan filing and plan acceptance exclusivity periods sought pursuant to 11 U.S.C. § 1121(d) for 120 days each.

///

///

///

///

## III.

## <u>CONCLUSION</u>

*Wherefore*, the Debtor respectfully requests Court approval of a 120-day extension of each of its plan filing and plan acceptance exclusivity periods, without prejudice to any subsequent requests for extensions based upon the status of the case at such future times or other unforeseeable circumstances.

Dated:  May 27, 2015                          **Respectfully submitted,**

**Law Offices of Paul A. Beck**
**A Professional Corporation**


By */s/ Lewis R. Landau*
Paul A. Beck
Lewis R. Landau
Attorneys for Debtor

### DECLARATION OF PERVEZ P. DELAWALLA

I, Pervez P. Delawalla, do hereby declare:

1.      I am the President and Chief Executive Officer of Net Data Centers Inc., the debtor and debtor in possession in this bankruptcy case (the "Debtor").  I am also a member of the board of directors of the Debtor and its sole shareholder. Unless otherwise stated, I have personal knowledge of the facts set forth in this declaration.

2.      On February 23, 2015 the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. The Debtor continues to operate and manage their affairs as Debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No trustee or examiner has been appointed in this chapter 11 case.  An official committee of unsecured creditors ("Committee") was appointed on April 24, 2015.  *See*, ECF # 79.

3.      The Debtor is an internet-based data center service provider delivering redundant power, cooling, network connectivity and managed services within its data center locations.  The Debtor provides access to internet-based applications, providing critical file and data storage and related services directly to its customers.  Leading social networks, enterprises, finance, content companies, and communications service providers rely on the Debtor's services for uninterrupted operations to support their applications.  Additional information about the Debtor's operations and management is available on its website at *www.netdatacenters.com*.

4.      The Debtor is a party to 9 unexpired leases of non-residential real property, on which it operates eight (8) data centers, four (4) in New Jersey and Virginia (involving five (5) leases), and four (4) in Los Angeles County (involving three (3) leases), and a corporate office located in El Segundo, California.  The Debtor's various data centers host over 170 of its clients' databases of critical operating data, to which their customers and clients must have continuous, immediate and seamless access at all times, 24 hours a day, 7 days a week.  The Debtor manages the business operations of its data centers, collects customers' service agreement and lease payments, services its customers' needs at each data center location, and pays the expenses of operating and managing the data centers.  The Debtor generates its revenues primarily from its customers' managed service agreements.

5.    The Debtor's customers, in turn, sublease space and power from the Debtor pursuant to managed service agreements.  Since the leases were entered into at the height of the real estate market approximately 8 years ago, the Debtor's leases with its landlords are all at rates that are significantly higher than current fair market values, and that is the essence of the Debtor's current financial dilemma.  If the landlords' leases can be restructured to reflect current market conditions and to accommodate the Debtor's current capacity requirements, the Debtor can operate profitably and propose a plan of reorganization that would enable the Debtor both to assume the restructured leases and to repay prepetition debt to the landlords as part of a confirmed plan.  If the landlords' leases cannot be restructured in such a manner, the Debtor inevitably faces the prospect of being required to reject certain of its least profitable leases unless it can locate a suitable purchaser for the affected locations.

6.    As of the Petition Date, the Debtor holds assets valued at approximately $9.5 million and liabilities totaling approximately $17.4 million on a balance sheet basis.  However, the Debtor's operating margins are far more closely balanced, and the Debtor clearly has the capacity to operate profitably depending upon its ability to restructure its leases to reflect current fair market values and to meet its current capacity requirements.  The Debtor determined that it had to commence its Chapter 11 case because its restructuring efforts with one of its landlords had foundered, and the landlord determined that it would no longer forbear from declaring a default and that it would proceed with notices to pay or quit.  The Debtor concluded it had no choice but to file Chapter 11 in order to stave off the landlord's potential eviction.

7.    Thus, the major issues and problems which must be addressed and resolved in the Chapter 11 case include the following:

a.    As referenced above, the Debtor intends to utilize the Chapter 11 case to restructure its over-market leases with its landlords and to successfully reorganize.  On behalf of the Debtor, I believe that these leases can and should be adjusted to reflect current market conditions and capacity requirements, which would enable the Debtor to reorganize and operate profitably, and thereby to repay its creditors under a confirmed plan of

reorganization as it emerges from the bankruptcy case.  I believe this result would be in the best interests of the bankruptcy estate and of all of its creditors.

b. The Debtor intends to propose and confirm a plan designed to pay allowed claims based on the Debtor's projections with respect to anticipated revenues over the course of the next three to five years.  The Debtor intends to utilize its profitable operating revenues to make pro rata payments to its unsecured creditors, after paying its allowed priority and administrative claims in full.

c. The principal disputes or problems which must be addressed and resolved in the context of the anticipated reorganization involve the Debtor's negotiations with its four landlords.  In addition to the landlords' prepetition notes and unsecured claims, which represent the largest claims in the estate, the Debtor must successfully restructure its ongoing data center leases in order to be able to assume them.  Those leases which cannot be restructured will in all likelihood be assigned or rejected.  Rejection damages claims of the landlords are then subject to § 502(b)(6) of the Code.   However, if the Debtor is able to successfully restructure some or all of its leases, it believes it will be able to propose, confirm and consummate a plan of reorganization that will lead to payment on account of its creditors' claims.

8.      The Debtor proposes to continue its ongoing negotiations with its landlords, which began prior to the commencement of the bankruptcy case.  The Debtor's negotiations have advanced to the point of exchanging term sheets with several of its landlords.  The Debtor continues to analyze the current market conditions and its projected operating revenues and expenses in order to carry its negotiations forward.  Ultimately, the Debtor recognizes that it must either move to assume the leases, as proposed to be modified, or reject them.

9.      The timing of the Debtor's lease restructuring efforts is paramount.  The longer the process takes, the more difficult it will be to successfully reorganize as the over-market leases are diminishing the Debtor's liquidity.  The Debtor has accelerated the negotiating process and hopes to achieve agreements on modified leases with its respective landlords in June 2015.  Immediately following the April 15, 2015 Chapter 11 status conference, Debtor's counsel and I met with

counsel for DupontFabros Technology ("DFT"), the Debtor's single largest landlord and the single largest creditor of the Chapter 11 estate. In that meeting, the Debtor described its ongoing negotiations with at least one suitor and the anticipated execution of a letter of intent with that suitor, which would in turn lead to direct negotiations between DFT, the Debtor and the suitor.

10.    Thereafter, on May 11, 2015, the Debtor engaged the services of an investment banker, 321 Capital Partners, LLC ("321 Capital"), as its exclusive agent to utilize 321 Capital's database and Debtor's leads to identify candidates to enter into a "Strategic Transaction" with the Debtor. The term of 321's exclusive agency began as of the date of its engagement and shall continue for one hundred twenty (120) days, with automatic extensions thereafter unless cancelled or otherwise agreed. The contemplated "Strategic Transaction" includes but is not limited to asset sales and acquisitions, financing (debt or equity), or another vehicle that would enable the Debtor to emerge from its Chapter 11 case. As the first stage in its process, 321 Capital has already prepared marketing materials and confidential information memoranda, and has also secured a due diligence data room which includes vital information regarding the business of the Debtor.

11.    The second stage of 321 Capital's process requires it to locate parties who may have an interest in purchasing assets, or in investing in and/or refinancing the business. That process is also underway. Thereafter, 321 Capital shall perform related services necessary to maximizing the proceeds to be realized from any such "Strategic Transaction." The Debtor's application to employ 321 Capital as its investment banker is pending Court approval. *See*, ECF # 115.

12.    In addition to its efforts to negotiate a modification of the over-market rate leases of its East Coast leases with DFT, the Debtor has also been engaged in discussions with representatives of GIP 7th Street, Inc. (an affiliate of Digital Realty Trust ("DRT") and Charter Holdings, Inc. ("Charter") regarding the negotiation of modifications to the over-market rate leases of certain of its West Coast leases with DRT and Charter during the past 30 days, while it analyzes the latest available data regarding appropriate lease rates for its local data centers and its cashflow requirements for the continued maintenance of its operations.

13. The Debtor intends to seek approval of a disclosure statement and confirmation of a plan of reorganization that will be designed to pay allowed claims and interests. The Debtor intends to utilize the proceeds of its business plan to allocate pro rata payments to its unsecured creditors, after paying priority and administrative claims in full. The Debtor intends to propose a disclosure statement and plan of reorganization based on appropriate projections with respect to its anticipated revenues over the course of the next three to five years.

14. On behalf of the Debtor, I believe that maintaining exclusivity for an additional 120 days will facilitate moving the case forward toward a fair and equitable resolution. A 120-day extension will advance the plan filing and plan acceptance exclusivity periods to Wednesday, October 21, 2015, and Monday, December 21, 2015, respectively.

15. The Debtor's request to extend exclusivity constitutes the Debtor's first such request. The Debtor is concurrently seeking a 90-day extension of the Debtor's time to assume or reject its real estate leases. This extension is reasonable as it is tied to resolving pending lease-related issues. Fundamental plan-related terms cannot be determined until cashflow is stabilized, based on proposed rent reductions, and all claims are fixed and ascertained. The requested 120-day extension should be sufficient to allow these fundamental case contingencies to be determined.

16. Debtor's Chapter 11 case clearly involves complicated "case aspects" that create complexity with respect to advancing the case through a chapter 11 plan at this point in time. The Debtor must conclude its negotiations with each of the landlords to determine if consensual rent reductions are possible, and if not, the Debtor must then determine which Leases to reject. It is obvious that Lease assumptions and rejections will directly impact the available chapter 11 plan distributions and cashflow, and the quantum of rejection damages claims under 11 U.S.C. §502(b)(6).

17. Ascertaining a fixed and final schedule of claims to be addressed under the Debtor's anticipated plan of reorganization is a fundamental aspect of plan preparation and will determine the term of any plan that is designed to pay allowed claims in full. The requested exclusivity extension will presumably provide the Debtor with sufficient time to conclude its lease

negotiations and related matters involving the landlords (including mitigation of rejection damages claims, if as applicable), to reconcile claims after the bar date has passed, to file any objections to claims, and to draft and propose its chapter 11 plan. The requested extension of exclusivity is reasonable in view of these complicated aspects of the Debtor's Chapter 11 case.

18.    As described above, the complexity in this case arises from the complex issues posed by the Debtor's over market leases. As negotiations continue with the landlords, the Debtor will need to strategically determine how best to maximize value for the estate through negotiated resolutions with some or all of the lessors or it will need to unilaterally move to eliminate the most burdensome leases and discontinue paying the over-market rental rates charged by the landlords. To the extent any of the leases are terminated, arrangements must be undertaken and successfully concluded with the landlords to remove the Debtor's valuable equipment that is located within the respective leased premises, and to transition the Debtor's valuable customer relationships in order to avoid any possibility of service interruptions. The Chapter 11 case has not been pending long relative to the contingency creating this particular case complexity.

19.    Debtor is proceeding in good faith, making all required disclosures and demonstrating its transparency and desire to facilitate a resolution which will inure to the benefit of all of its general unsecured creditors.

20.    The Debtor is operating profitably post-petition, but its over-market rents are diminishing its operating revenues. *See*, ECF # 69 (cash flow supplement to Debtor's chapter 11 status report). The Debtor has paid all post-petition rent due to its landlords to date, but it will need to immediately resolve its lease-related negotiations to reduce its over-market rents, or it will have no alternative but to commence lease rejection proceedings to support its continued liquidity.

21.    The Debtor has a reasonable prospect for filing a viable plan. The Debtor's cash flow statement reflects the Debtor's ability to generate revenues to support a plan. The Debtor will need to strategically determine how best to maximize value for the estate through negotiated resolutions with some or all of its data center lessors, or it will need to unilaterally move to eliminate its most burdensome leases and discontinue paying the over-market rents. To the extent that any of the Leases are terminated, arrangements must be concluded to remove the Debtor's

valuable equipment that is located within the leased premises and transition its valuable customer relationships in order to avoid any possibility of service interruptions to the affected customers and clients.  All of this complex strategic planning is in process and requires additional time to reasonably conclude in the best interests of the estate.

22.    The Debtor is earnestly working both to maintain satisfactory relationships and to make progress with its key creditors and customers.  To date, the Debtor has remained current on all of its post-petition obligations, including paying the over-market rents to its lessors.  The Debtor also has engaged its key creditor landlords in negotiations to attempt to consensually develop a business plan.  Furthermore, the Debtor has cooperated with the Creditors' Committee in its efforts properly to administer the chapter 11 estate.  Early in May, the Debtor took steps to retain an investment banker to assist the Debtor in developing turnaround plans.  Thus, the Debtor believes it has made satisfactory progress in negotiations with its key creditors sufficient to warrant the extension of exclusivity it has requested herein.

23.    The Debtor is seeking a 120-day extension of exclusivity consistently with its concurrently pending request for a 90-day extension of the Debtor's time to assume or reject its real estate leases.  The instant extension as requested by this Motion seeks to retain exclusivity and the *status quo,* and thereby avoid the cost and expense of competing plans while fundamental case contingencies related to the Debtor's real property leases are in the process of being addressed and resolved.

24.    The Debtor has remained current with respect to all of its United States Trustee ("UST") reporting requirements and the filing of its UST Monthly Operating Reports.  The Debtor has maintained cooperation with the Creditors' Committee regarding the administration of the Chapter 11 case, and has responded affirmatively to any and all requests for information or documentation presented to it by the Creditors' Committee counsel.  The Debtor is, therefore, duly meeting all of its disclosure requirements and is not depriving the creditors of any material or relevant information.

25.    Accordingly, I believe that the Debtor is making good faith progress toward proposing a confirmable chapter 11 plan of reorganization.  The Debtor's case is in good standing

1 | before the Court and with respect to its compliance with the UST Guidelines and all other

2 | compliance UST and Bankruptcy Court requirements.  Maintaining exclusivity for an additional

3 | 120 days will facilitate moving the case forward toward a fair and equitable resolution under all

4 | the foregoing circumstances.

5 |     I declare under penalty of perjury under the laws of the United States of America that the

6 | foregoing is true and correct to the best of my knowledge, information and belief.

7 |     Executed this 27th day of May, 2015 at Los Angeles, California.

Pervez P. Delawalla

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:

13701 Riverside Drive, Suite 701

Sherman Oaks, California 91423

A true and correct copy of the foregoing document entitled: **NOTICE OF MOTION FOR** (*specify name of motion*)
ORDER APPROVING 120 DAY EXTENSION OF EXCLUSIVITY PERIODS

will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*)
05/27/2015   , I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☒ Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**:
On (*date*)  05/27/2015   , I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

Judge Bluebond, US Bankruptcy Court, 255 E. Temple Street, Suite 1482, Los Angeles, CA 91367

☐ Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) _____, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| 05/27/2015 | Lewis R. Landau | /s/ Lewis R. Landau |
|------------|-----------------|---------------------|
| *Date* | *Printed Name* | *Signature* |

This form is mandatory.  It has been approved for use in the United States Bankruptcy Court for the Central District of California.

| In re: Net Data Centers, Inc. | CHAPTER: 11 |
|---|---|
| Debtor(s). | CASE NUMBER: 2:15-bk-12690-BB |

**ADDITIONAL SERVICE INFORMATION (if needed):**

NEF Service List (category I):

Paul A Beck on behalf of Debtor Net Data Centers, Inc. pab@pablaw.org
Ronald K Brown on behalf of Creditor The Realty Associates Fund IX, L.P. rkbgwhw@aol.com
Susan S Davis on behalf of Creditor Avanz Technologies, LLC sdavis@coxcastle.com
Susan S Davis on behalf of Creditor Chad Long sdavis@coxcastle.com
Susan S Davis on behalf of Defendant Avanz Technologies, LLC sdavis@coxcastle.com
Susan S Davis on behalf of Defendant Chad Long sdavis@coxcastle.com
Robert L Eisenbach, III on behalf of Creditor DuPont Fabros Technology, L.P. reisenbach@cooley.com
Robert L Eisenbach, III on behalf of Creditor Fox Properties LLC reisenbach@cooley.com
Robert L Eisenbach, III on behalf of Creditor Grizzly Ventures LLC reisenbach@cooley.com
Robert L Eisenbach, III on behalf of Creditor Lemur Properties LLC reisenbach@cooley.com
Robert L Eisenbach, III on behalf of Creditor Whale Ventures LLC reisenbach@cooley.com
William F Govier on behalf of Debtor Net Data Centers, Inc. wgovier@lesnickprince.com, tmims@lesnickprince.com
Michael S Greger on behalf of Interested Party Courtesy NEF mgreger@allenmatkins.com
Brian T Harvey on behalf of Interested Party Courtesy NEF bharvey@buchalter.com, IFS_filing@buchalter.com; dbodkin@buchalter.com
Lesley A Hawes on behalf of Interested Party Courtesy NEF lhawes@mckennalong.com, comeara@mckennalong.com
Brian L Holman on behalf of Creditor Charter Holdings, Inc. b.holman@mpglaw.com
Mette H Kurth on behalf of Interested Party Courtesy NEF mkurth@foxrothschild.com, vcordi@foxrothschild.com; pchlum@foxrothschild.com
Lewis R Landau on behalf of Debtor Net Data Centers, Inc. Lew@Landaunet.com
Lewis R Landau on behalf of Interested Party Courtesy NEF Lew@Landaunet.com
Lewis R Landau on behalf of Plaintiff Net Data Centers, Inc. Lew@Landaunet.com
Matthew A Lesnick on behalf of Interested Party Courtesy NEF matt@lesnickprince.com, tmims@lesnickprince.com; matt@ecf.inforuptcy.com
Ron Maroko on behalf of U.S. Trustee United States Trustee (LA) ron.maroko@usdoj.gov
Jessica G Peterson on behalf of Interested Party Akamai Technologies, Inc. jpeterson@djplaw.com, khughes@djplaw.com
Daren M Schlecter on behalf of Interested Party Courtesy NEF daren@schlecterlaw.com, assistant@schlecterlaw.com
Steven M Spector on behalf of Creditor Committee Official Committee of Creditors Holding Unsecured Claims sspector@buchalter.com, IFS_efiling@buchalter.com;salarcon@buchalter.com
Steven M Spector on behalf of Interested Party Courtesy NEF sspector@buchalter.com, IFS_efiling@buchalter.com; salarcon@buchalter.com
Wayne R Terry on behalf of Interested Party Courtesy NEF wterry@hemar-rousso.com
United States Trustee (LA) ustpregion16.la.ecf@usdoj.gov

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*January 2009*    **F 9013-3.1**